**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MEDICAL CENTER ORTHOTICS AND PROSTHETICS, LLC**<br><br>**Plaintiff and Defendant-in-Counterclaim,**<br><br>**v.**<br><br>**JOHN WARREN and BRIGHT INNOVATIONS LLC d/b/a, WARREN PROSTHETIC LABS,**<br><br>**Defendants and Plaintiffs-in-Counterclaim.** | **Civil Action No. 26-12402-BEM** |

**MEMORANDUM AND ORDER ON**
**PLAINTIFF'S SPECIAL MOTION TO DISMISS & MOTION TO DISMISS**

**MURPHY, J.**

This is an action arising out of an alleged breach of an agreement between Plaintiff Medical Center Orthotics and Prosthetics, LLC ("MCOP") and Defendants John Warren and his company Bright Innovations LLC d/b/a Warren Prosthetic Labs (collectively, "Defendants"). Plaintiff alleges Warren breached a non-competition agreement when Warren founded his own prosthetics company. Plaintiff additionally alleges Defendants committed multiple business torts following Warren's departure. Defendants raise three counterclaims against Plaintiff related to that alleged non-competition agreement: fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), and a violation of Mass. Gen. Laws ch. 93A (Count III). Currently before the Court are two motions seeking to dismiss Defendants' counterclaims: Plaintiff's special motion to dismiss under the Massachusetts anti-SLAPP statute, and Plaintiff's motion to dismiss pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the Court finds that Defendants' counterclaims do not arise entirely out of petitioning activity, the Court will deny Plaintiff's special motion to dismiss. However, because Defendants fail to allege truthful reliance on Plaintiff's alleged misrepresentations, the Court will grant Plaintiff's motion to dismiss.

## I. **Factual and Procedural Background**

The Court draws the following facts from Defendants' counterclaims, Dkt. 15 ("Counterclaims" or "Countercl."), and accepts them as true for the purposes of the instant motions.[1]

John Warren, a Massachusetts resident and prosthetist, owns, manages, and operates Bright Innovations LLC, a Wyoming LLC based in Massachusetts, doing business as Warren Prosthetic Labs. *Id.* ¶¶ 1–3, 5. Plaintiff is a Maryland LLC based in Silver Spring, Maryland. *Id.* ¶ 4.

Beginning in 2012, Warren worked as a contractor for Plaintiff. *Id.* ¶ 21. In 2015, Plaintiff hired Warren full-time as an Office Manager. *Id.* His responsibilities included assisting with opening Plaintiff's Allston office, running that office once it opened, and treating patients. *Id.* ¶¶ 21–22, 25. In 2020, Plaintiff promoted Warren to Director, and his responsibilities expanded to include overseeing Plaintiff's Milton office. *Id.* ¶¶ 23–24.

After many years with Plaintiff, Warren became "frustrated with MCOP's operations and work environment." *Id.* ¶ 26. In February 2025, he formed Bright Innovations as part of a plan to eventually operate his own prosthetics company. *Id.* ¶ 28. Later that year, in summer 2025, Plaintiff was purchased by Embla Medical. *Id.* ¶ 27. Under the new management, Warren

[1] The Court will disregard any contradictions between the facts alleged in Defendants' counterclaims and the facts alleged in Plaintiff's complaint. However, where Defendants admit to Plaintiff's allegations in their answer, the Court will consider those admissions alongside the counterclaims. *Romero Reyes v. Marine Enters., Inc.*, 494 F.2d 866, 868 (1st Cir. 1974) ("That which a defendant admits in his answer is binding upon him." (quoting *Freedom Nat'l. Bank v. N. Ill. Corp.*, 202 F. 2d 601, 605 (7th Cir. 1953))).

experienced "collaboration and efficiency issues" and "became concerned with the company's policies and procedures regarding patient care and treatment of employees." *Id.*

On or about March 25, 2026, Warren gave Plaintiff his notice of resignation. *Id.* ¶ 29. His final day with Plaintiff was April 7, 2026. *Id.* On or about April 20, 2026, counsel for Plaintiff sent Warren a letter alleging that Warren had breached a 2018 written agreement (the "2018 Agreement") by founding and operating Bright Innovations. *Id.* ¶ 30. On April 24, 2026, Warren's counsel requested a copy of the 2018 Agreement, which was not included with the original letter. *Id.* ¶¶ 31–32.

Thereafter, counsel for Plaintiff furnished the 2018 Agreement to Warren's counsel, but a page was missing from the document. *Id.* ¶¶ 33, 35. On May 4, 2026, Plaintiff's counsel sent Warren "a document seemingly identical to the first document" but including the previously missing page. *Id.* ¶¶ 39–40. The signature lines on the signature page were blank. *Id* ¶ 40. On May 11, 2026, Plaintiff's counsel sent another "seemingly identical" document, this time with a hand-written "John Warren" next to the "Name" field. *Id.* ¶ 41; *see also* Dkt. 15-1 at 7. The "Title" field included a hand-written position: "Director New England." Countercl. ¶ 38; *see also* Dkt. 15-1 at 7. Warren acknowledges that "the handwriting and signatures on the aforementioned documents appear to be his, but he cannot be certain." Countercl. ¶ 43.

On May 27, 2026, Plaintiff filed its complaint in this matter alleging claims for breach of contract, declaratory judgment, breach of fiduciary duty and duty of loyalty, tortious interference with business relations, misappropriation of trade secrets, unfair and deceptive trade practices, and unjust enrichment. *See generally* Dkt. 1 ("Complaint"). On June 10, 2026, Plaintiff sent Warren a copy of his MCOP personnel file, which included the 2018 Agreement. Countercl. ¶ 42. Warren

asserts that he signed a separate non-competition agreement in 2021, which was not included in his personnel file. *Id.* ¶¶ 44, 46.

Defendants allege the 2018 Agreement is a "forged and/or fraudulent document," because Warren had not yet been promoted to Director in 2020. *Id.* ¶ 55. According to Defendants, Plaintiff either inserted a signature page from a post-promotion document into the 2018 Agreement or forged his signature. *Id.* ¶¶ 58–59.

On July 30, 2026, Defendants filed three counterclaims all arising out of Plaintiff's communications regarding the 2018 Agreement: intentional misrepresentation or fraud (Count I), *id.* ¶¶ 63–68; negligent misrepresentation (Count II), *id.* ¶¶ 69–75; and unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A, § 11 ("Chapter 93A") (Count III), *id.* ¶¶ 76–80. On August 19, Plaintiff filed a special motion to dismiss pursuant to Mass. Gen. Laws ch. 231, § 59H, along with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkts. 16–19. The Court held a hearing on November 3, 2026, and took the motions under advisement.

The Court will address Plaintiff's special motion to dismiss first before turning to Plaintiff's motion to dismiss for failure to state a claim.[2]

## II. <u>Special Motion to Dismiss</u>

Under the Massachusetts anti-SLAPP statute, a party may "bring a special motion to dismiss" in cases where "civil claims, counterclaims, or cross claims . . . are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth." Mass. Gen. Laws ch. 231, § 59H. Among other actions, petitioning activity includes "any written

---

[2] Courts must "prioritize the resolution of the [special] motion over other matters in the case." *Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*, 493 Mass. 539, 550 (2024).

or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding." *Id.* Following the Massachusetts Supreme Judicial Court's recent decision in *Bristol Asphalt, Co. v. Rochester Bituminous Products, Inc.*, 493 Mass. 539 (2024), courts analyzing a special motion to dismiss proceed in two stages. In the first stage, the proponent of a special motion to dismiss "must show that the challenged count has no substantial basis in conduct other than or in addition to the special motion proponent's alleged petitioning activity." *Id.* at 555–56. At the second stage, the burden shifts to the opponent of the special motion to dismiss to show that "the special motion proponent's exercise of its right of petition 'was devoid of any reasonable factual support or any arguable basis in law' and . . . 'caused actual injury to the [special motion opponent].'" *Id.* at 557 (alteration in original) (quoting Mass. Gen. Laws ch. 231, § 59H). If so, the relevant claims must be dismissed and the successful movant is also entitled to attorney's fees. *Id.* at 540.

Here, Defendants' three counterclaims arise out of the same set of operative facts. Dkt. 24 at 3 (noting that all of Defendants' counterclaims are "substantially based" upon Plaintiff's "demand letter and subsequent communications"). Plaintiff asserts that the relevant actions, including its "pre-suit demand, counsel's communications, and production of the employment agreement," were all precursors to the eventual filing of the complaint. Dkt. 17 at 4. Accordingly, Plaintiff argues, "[t]hose communications therefore constitute the same protected course of petitioning activity that culminated in this lawsuit." *Id.* .

But courts have been clear, before and after *Bristol Asphalt*, that "prelitigation demand letters . . . do not constitute petitioning activity under the anti-SLAPP statute." *Gratuity Sols., LLC v. Toast, Inc.*, 2026 WL 1329558, at *3 (D. Mass. May 13, 2026) (holding that a Chapter 93A counterclaim based in conduct that occurred before the lawsuit was filed sought redress for

non-petitioning activity); *see S&S Lumber, Inc. v. Sun*, 2017 WL 176450, at *2 (Mass. App. Ct. Jan. 17, 2017) ("[P]relitigation correspondence between private parties concerning their dispute does not constitute petitioning activity within the meaning of the statute."); *see also Giuffrida v. High Country Inv., Inc.*, 73 Mass. App. Ct. 225, 243 (2008) ("While there are important reasons to afford legal protection to prelitigation demand letters, as recognized by the existence of the litigation privilege . . . , the anti-SLAPP statute does not, in terms, provide additional protection for such communications." (citing *Kobrin v. Gastfriend*, 443 Mass. 327, 340–41 (2005))). To the extent Defendants' counterclaims also include elements of petitioning activity, especially after Plaintiff filed its suit, the Court need not sort the actions into two buckets. "The parsing of claims involving a mixture of petitioning and other matters is best addressed in the course of ordinary litigation, where both sides' claims and defenses can be fully analyzed based on a more complete record, not special motions to dismiss." *Bristol Asphalt*, 493 Mass. at 554. For this reason, Plaintiff's special motion to dismiss is denied and the Court turns to Plaintiff's motion to dismiss for failure to state a claim.

## III. Motion to Dismiss

### A. Legal Standard

Courts analyzing counterclaims under Federal Rule of Civil Procedure 12(b)(6) apply the same standard as is "applied in ruling on the motions to dismiss the complaint." *Gouin v. Gouin*, 249 F. Supp. 2d 62, 67 (D. Mass. 2003). Under that standard, the Court must determine whether the factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a counterclaim

plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

**B. <u>Discussion</u>**

**1. <u>Counts I and II: Fraudulent Misrepresentation & Negligent Misrepresentation</u>**

Defendants allege Plaintiff "furnished Warren with a fraudulent document, the 2018 [Agreement], and stated that Warren signed it." Countercl. ¶ 64. According to Defendants, Plaintiff "knew that the 2018 document was fraudulent and knew that Warren did not sign it or recklessly disregarded the fact it was fraudulent." *Id.* ¶ 65. These actions, according to Defendant, constitute fraudulent misrepresentation and/or negligent misrepresentation. *Id.* ¶¶ 63–75. Plaintiff argues for dismissal because the furnishing of the 2018 Agreement is protected by the litigation privilege and that Defendants did not rely on the alleged misrepresentation. Dkt. 19 at 4–10. The Court will begin with the latter argument, which Defendants fail to address in their opposition.[3]

[3] Defendants filed a four-page opposition which only addressed Plaintiff's litigation privilege arguments—Plaintiff's arguments related to the actual merits of each counterclaim went unanswered. *See generally* Dkt. 23. In general, arguments not raised in opposition to a motion to dismiss are waived. *See, e.g.*, *Lama-Wolobah as Pers. Representative of Est. of H.W. v. Paqui LLC*, 2026 WL 907418, at *6 (D. Mass. Mar. 31, 2026) (deeming any opposition arguments waived where the plaintiff "provide[d] no opposition to the Defendants' arguments on this claim."); *see also Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 217 (D. Mass. 2018) (same). Nevertheless, the Court will address these merits arguments, if only to underscore that dismissal is proper.

Under Massachusetts law, to establish a claim for fraud or fraudulent misrepresentation, Defendants must allege that Plaintiff: (1) made a false representation of material fact; (2) with knowledge of its falsity; (3) for the purpose of inducing Defendants to act on this representation; (4) that Defendants reasonably relied on the statement as true; and (5) that Defendants were injured as a result of their reliance. *See AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 928 F.3d 110, 122 (1st Cir. 2019) (citing *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471–72 (2009)). Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires fraud claims "be alleged with particularity." *Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 15 (1st Cir. 2004). Particularity is a heightened pleading standard requiring the plaintiff to detail, with specificity, the "who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). In addition to mandating that a plaintiff allege particular facts, Rule 9(b) also requires "identifying the basis for inferring scienter." *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009). To do so, a plaintiff must "set[] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J.).

A claim for negligent misrepresentation contains similar elements. *Monks v. Astoria Bank*, 2017 WL 2435278, at *6 (D. Mass. June 5, 2017) ("Under Massachusetts law, claims for misrepresentation and deceit are sufficiently closely related that the 'borderline between what is an action for deceit and what is an action for negligent misrepresentation is unclear.'" (quoting *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 22 (1st Cir. 2001)). Defendants must allege that Plaintiff "(1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others[,] (5)

by their justifiable reliance on the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006) (cleaned up).

Here, both claims fail because Defendants do not allege that they relied upon the alleged misrepresentation as true. Defendants argue that they "reasonably relied on MCOP statements and the document, causing and forcing Warren to engage counsel and incur legal fees," and that "Bright Innovations' operations were impacted by MCOP." Countercl. ¶ 67. But Defendants concede they actually *did not* rely on Plaintiff's statements as true. *Id.* ¶ 57 ("Warren . . . thus would not have and did not sign the 2018 [Agreement]."); *see also* Dkt. 24-2 ¶ 4 ("I have absolutely no recollection of seeing or hearing about this agreement, let alone signing it. I engaged counsel shortly after receiving the letter."). Instead, they are actively disputing the 2018 Agreement in court. *See Steinmetz v. Coyle & Caron, Inc.*, 2016 WL 4074135, at *9 (D. Mass. July 29, 2016) (finding that plaintiffs "cannot argue that they reasonably relied" upon a misrepresentation where plaintiffs "expressly disputed the accuracy" of the representation). It is clear from the pleadings that Defendants never accepted the 2018 Agreement as legitimate or Plaintiff's representations as true. Accordingly, their claims for fraudulent misrepresentation and negligent misrepresentation cannot stand.[4] Plaintiff's motion to dismiss Counts I and II is granted.

---

[4] With respect to the fraud claim, Defendants also fail to identify any basis for inferring scienter. The Counterclaim only includes conclusory allegations that the 2018 Agreement is "forged" or "fraudulent" and that "MCOP inserted the signature page into the 2018 [Agreement] from another document." Countercl. ¶¶ 55, 58. Though Defendants highlight discrepancies in Warren's then-title of Office Manager and his "Director" title in the 2018 Agreement, Defendants do not allege, with specificity, any facts from which the Court can infer Plaintiff intended to forge the 2018 Agreement or inserted a new signature page whole-cloth. Defendants therefore also fail to meet their heightened pleading burden under Rule 9(b).

### 2. Count III: Chapter 93A

Defendants also claim that "MCOP's conduct violates the standards of unfair methods of competition or unfair/deceptive trade practices," in violation of Chapter 93A. Countercl. ¶ 78. Plaintiff argues that Chapter 93A "does not establish an independent remedy for unfair or deceptive dealings in litigation." Dkt. 19 at 10–11.

The Court need not address Plaintiff's arguments for dismissal because, standing alone, Defendants' Chapter 93A claim fails as a matter of law. "The SJC has clearly articulated the standard that if a Chapter 93A claim is 'derivative of' other claims which fail as a matter of law, the Chapter 93A claim 'must also fail.'" *Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024) (quoting *Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 85–86 (2004)); *see also McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 399 (D. Mass. 2025) ("Where a 93A claim is 'based on the same economic theory of injury and the same alleged set of facts' as another, such that they are 'factually and legally intertwined,' the claims 'should survive or fail under the same analysis.'" (quoting *Iannachino v. Ford Motor Co.*, 451 Mass. 623, 634–35 (2008))). The Counterclaim makes no distinction between "MCOP's conduct" related to the fraudulent misrepresentation and negligent misrepresentation claims as compared to the Chapter 93A claim. Countercl. ¶ 78. Accordingly, Defendants' Chapter 93A claim also fails. Plaintiff's motion to dismiss Count III is granted.

## IV. Conclusion

For the foregoing reasons, Plaintiff's special motion to dismiss is DENIED. Plaintiff's motion to dismiss is GRANTED. Defendants' counterclaims are dismissed.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: November 10, 2026